## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**DRAGON PHARMA LLC,**
a Florida limited liability company,

   Plaintiff,

v.

**ACCELERATED GENETIX, LLC**,
a Texas limited liability company, and
**BRETT BECKER**, an individual,

   Defendants.

_____/

### COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Dragon Pharma LLC ("Dragon Pharma") hereby sues Defendants, Accelerated Genetix, LLC ("AG") and Brett Becker ("Becker") (collectively AG and Becker are referred to hereinafter as "Defendants"), and states as follows:

### INTRODUCTION

1. This action is about Defendants selling counterfeit Dragon Pharma dietary supplement products and their infringement of Dragon Pharma's trademarks.  It recently came to Dragon Pharma's attention that Defendants are promoting and otherwise advertising, distributing, selling, and/or offering for sale, goods bearing counterfeit and infringing trademarks that are exact copies of one or more of the Dragon Pharma Trademarks, without Dragon Pharma's authorization or consent ("Counterfeit Dragon Pharma® Goods") for sale goods in interstate commerce to third party resellers.

2. Until recently, AG acted as the sole contract manufacturer of Dragon Pharma's products.  Dragon Pharma discovered that AG was not compliant with current Good Manufacturing Practices ("cGMPs"), 21 U.S.C. Part 111 and was selling Dragon Pharma product that failed to meet label claim and were non-conforming, which Dragon Pharma could not and

cannot resell.  Prior to becoming aware of these facts, Dragon Pharma had already submitted to AG pre-printed Dragon Pharma® labels and purchase orders for 75,000 units of products.  Upon information and belief, instead of repackaging or destroying the product, AG and its CEO, Becker, have been reselling these products as Counterfeit Dragon Pharma® Goods to retailers, under the Dragon Pharma® brand and utilizing the previously supplied labels without Dragon Pharma's authorization or consent, which constitutes counterfeiting, trademark infringement, and unfair competition in violation of both the Lanham Act and state law.  Dragon Pharma brings this action to put an end to Defendants' unlawful behavior.

## THE PARTIES

3.     Dragon Pharma is a Florida limited liability company, with its principal place of business in Pompano Beach, Florida.

4.     AG is a Texas corporation, with its principal place of business at 344 McDonnell Street, Austin, Texas 75057, and its registered agent is United States Corporation Agents, Inc., located at 9900 Spectrum Drive, Austin, TX 78717.

5.     Becker is an individual residing in Texas and upon information and belief, is located at 344 McDonnell Street, Austin, Texas 75057.

## JURISDICTION AND VENUE

6.     This is an action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a).  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Dragon Pharma's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

7.      Personal jurisdiction over AG is proper because AG has:

a.      operated, conducted, engaged in, or carried on a business venture in the state of Florida and, in particular, the Southern District of Florida, including the sale of the Counterfeit Dragon Pharma® Goods from which this action arises, within the meaning of Fla. Stat. § 48.193(1)(a);

b.      committed tortious acts within the state of Florida and, in particular, the Southern District of Florida, including counterfeiting, trademark infringement, and unfair competition set forth herein, within the meaning of Fla. Stat. § 48.193(1)(b), and with knowledge that their tortious acts would be felt by Dragon Pharma in this judicial district; and

c.      engaged in substantial and not isolated activity within the state of Florida and, in particular, the Southern District of Florida, within the meaning of Fla. Stat. § 48.193(2).

8.      Personal jurisdiction over Becker is proper because he:

a.      authorized, directed, and/or participated in the operation, conducting, engaging in, and carrying on a business venture in the state of Florida and, in particular, the Southern District of Florida, including the sale of the Counterfeit Dragon Pharm®a Goods from which this action arises, within the meaning of Fla. Stat. § 48.193(1)(a);

b.      authorized, directed, and/or participated in the commission of tortious acts within the state of Florida and, in particular, the Southern District of Florida, including, counterfeiting, trademark infringement, and unfair competition set forth herein, within the meaning of Fla. Stat. § 48.193(1)(b), and with knowledge that their tortious acts would be felt by Dragon Pharma in this judicial district; and

c.      authorized, directed, and/or participated in the engagement of substantial and not isolated activity within the state of Florida and, in particular, the Southern District of Florida, within the meaning of Fla. Stat. § 48.193(2).

3

9.      Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(c)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and a substantial part of property that is the subject of the action; *i.e.*, the Counterfeit Dragon Pharma® Goods are being advertised, offered for sale, sold and/or shipped into this district.

## FACTUAL BACKGROUND

**Dragon Pharma and its Trademarks**

10.      Dragon Pharma is a leading manufacturer, distributor, and seller of dietary supplements in the United States and abroad.  Dragon Pharma has invested a significant amount of time, effort, and financial resources promoting, marketing, and advertising its Dragon Pharma® brand of dietary supplements, including Venom, Black Viper, Fematrope®, Mr. Veinz®, Mesotrope, Flex8, Cycle Shield, and Dryup.

11.      Dragon Pharma is the sole owner of all rights, title, and interest in and to the federally registered Dragon Pharma® trademark ("Dragon Pharma® Trademark") and the trademarks: Venom, Black Viper, Fematrope®, Mr. Veinz®, Mesotrope, Flex8, Cycle Shield, and Dryup (collectively, the "DP Trademarks") and as further set forth below:

| **Mark** | **Source** | **Goods** | **Serial No. / Reg. No.** |
|---|---|---|---|
| **Dragon Pharma**® | Federal | 005 – Fitness supplements, namely, dietary supplements 025 – Apparel, namely, t-shirts and tank tops          035 – Online retail store services featuring fitness supplements and apparel, namely, t-shirts and tank tops | 5,620,541 |
| **Mr. Veinz**® | Federal | 005 – Fitness supplements, namely, dietary supplements for pre-workout use | 5,848,670 |

4

| | | | |
|---|---|---|---|
| **Fematrope**® | Federal | 005 – Dietary and nutritional supplements used to promote muscle development; Dietary and nutritional supplements used to promote muscle development in female athletes | 5,655,864 |
| **Black Viper** | Federal | 005 – Dietary and nutritional supplements used to promote fat burning | 88/039,135 |
| **Venom** | Federal | 005 – Fitness supplements, namely, dietary supplements for pre-workout use | 88/038,853 |
| **Mesotrope** | Common Law | Dietary supplements | |
| **Flex8** | Common Law | Dietary supplements | |
| **Cycle Shield** | Common Law | Dietary supplements | |
| **Dryup** | Common Law | Dietary supplements | |

True and correct copies of the registrations for the marks Dragon Pharma®, Mr. Veinz®, and Fematrope® and the TESS status for the trademark applications submitted for the marks Black Viper and Venom filed with the United States Patent and Trademark Office are attached as Composite **Exhibit "1."**

12.     Dragon Pharma also owns all rights, title, and interest to the trade dress associated with the Dragon Pharma® dietary supplements, including Venom, Black Viper, Fematrope®, Mr. Veinz®, Mesotrope, Flex8, Cycle Shield, and Dryup dietary supplements.  True and correct depictions of the Dragon Pharma® Venom, Black Viper, Fematrope®, Mr. Veinz®, Mesotrope, Flex8, Cycle Shield, and Dryup dietary supplement products depicting the trade dress are attached Composite **Exhibit "2."**

13.     The DP Trademarks have been used by Dragon Pharma long before Defendants' use of copies of those trademarks and use on the Counterfeit Dragon Pharma® Goods.

14.     The Dragon Pharma® and DP Trademarks have never been assigned or licensed

to either of the Defendants in this action.

15.     The Dragon Pharma® and DP Trademarks are symbols of Dragon Pharma's quality, reputation, and goodwill and have never been abandoned.

16.     Dragon Pharma has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the Dragon Pharma® Trademark and the DP Trademarks.

17.     Dragon Pharma has extensively used, advertised, and promoted the Dragon Pharma® and DP Trademarks in interstate commerce throughout the United States and internationally in association with its high-quality dietary supplements.

18.     As a result of Dragon Pharma's efforts, members of the consuming public readily identify dietary supplements bearing or sold under the Dragon Pharma® Trademark and the DP Trademarks as being high quality dietary supplements sponsored and approved by Dragon Pharma.

19.     Accordingly, the Dragon Pharma® Trademark and DP Trademarks have achieved secondary meaning as identifiers of high-quality dietary supplements.

**The Dietary Supplement Health and Education Act of 1994 ("DSHEA") and cGMPs**

20.     Dietary supplements are regulated by the Food and Drug Administration ("FDA") via the Dietary Supplement Health and Education Act of 1995 ("DSHEA"), an amendment to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 ("FDCA").

21.     The FDA has issued cGMPs, 21 U.S.C. Part 111, which require, *inter alia*, that dietary supplement contract manufacturers, such as AG, test incoming raw ingredients for identity, potency, biological activity, and microbials.

22.     cGMPs also require contract manufacturers, such as AG, to test the finished product to ensure that the dietary supplements "meet label claim(s)" or have in the finished product what is claimed on the label (total weight, amount of ingredients on the "supplement facts" panel, etc.)

or, if applicable, the specification sheet and any other documents indicating the dietary supplement's formulation such as a certificate of composition.

23.     If a contract manufacturer such as AG manufactures product that does not meet label claim under the FDCA, that would indicate that it is not testing finished product and is not compliant with the FDA's cGMPs.

24.     cGMPs also require contract manufacturers to use unique lot numbers, or any distinctive group of letters, numbers, or symbols for each batch of product that is produced by a contract manufacturer because if there is an issue, with a unique lot number, the compete history of the manufacturing, packaging, labeling, and/or holding of a batch or lot of dietary supplements can be determined.  Thus, each product run, or batch, should have a different lot number assigned to it.

**Dragon Pharma and its relationship with Defendants**

25.     AG is a contract manufacturer of dietary supplements.

26.     Upon information and belief, Brett Becker is the President and CEO of AG.

27.     Upon information and belief, Mr. Becker authorized, directed, and/or participated in the sale of the Counterfeit Dragon Pharma® Goods.

28.     AG represents on its website that AG is "GMP certified."  A true and correct printout of AG's website is attached hereto as **Exhibit "3."**

29.     In 2017, AG began manufacturing Dragon Pharma® dietary supplements for Dragon Pharma.  Dragon Pharma would submit purchase orders to AG, put down a deposit, send AG its Dragon Pharma® pre-printed labels, and AG would manufacture the Dragon Pharma® dietary supplements, affix the pre-printed Dragon Pharma® labels to the finished product, have them shipped to Dragon Pharma, and send Dragon Pharma an invoice for the balance due.  Dragon Pharma would then receive the finished product, inspect it, certify its quality, approve it, and sell

it to retailers and the public.

30.     At no time did Dragon Pharma give AG permission or a license to use the Dragon Pharma® or DP Trademarks in any way.

31.     Dragon Pharma had many issues with AG selling it deficient or late product, including, but not limited to:

   a. AG's manufacture and sale of non-conforming products to Dragon Pharma, which clumped and was not suitable for sale, causing Dragon Pharma to lose customers and valuable shelf space, and incur shipping and freight, including internationally;

   b. AG's manufacture and sale of non-conforming products to Dragon Pharma, as AG substituted a different unapproved ingredient, which was not properly identified on the label and thus, not complaint with the FDCA;

   c. AG's manufacture and sale of non-conforming product to Dragon Pharma that did not meet label claim in that it did not match the weight on the label and also did not match the certificate of composition that AG provided to Dragon Pharma, as reflected in a certificate of analysis performed by an independent third-party lab; and

   d. AG's failure to deliver its products to Dragon Pharma in a timely manner (e.g., up to 5-6 weeks late), causing Dragon Pharma to lose valuable shelf space and customers. Paragraph 31 (a) – (c) shall be referred to as "Defective Goods").

32.     By the time Dragon Pharma first became aware that AG was selling Dragon Pharma® product that failed to meet label claim, failed to match AG's own certificates of composition, and was non-conforming, and that AG was not compliant with the FDA's cGMPs, Dragon Pharma had already submitted purchase orders to AG and given AG deposits in the amount of $127,015.00 and it preprinted labels for over 77,000 units of Dragon Pharma® goods ("Unsalable Goods") to be manufactured by Defendants, which Dragon Pharma could not and

would not accept because the products would be unsaleable.

33.     AG was never able to provide Dragon Pharma or its counsel with certificates of composition or certificates of analysis to prove that the Unsaleable Goods met label claims, matched AG's internal documents, or were otherwise conforming goods.

34.     At this time, Dragon Pharma had also provided AG with over 43,000 additional Dragon Pharma® product labels for future orders.

35.     On April 23, 2020, AG sent Dragon Pharma a demand letter, demanding that Dragon Pharma pay for, *inter alia*, remaining balance of the 77,245 units Unsaleable Goods and past due invoices for product that was late and/or non-conforming.  AG also threatened Dragon Pharma that it would be "forced to sell such goods [Unsaleable Goods] in order to recoup some of its damages."  A copy of the April 23, 2020 letter is attached as **Exhibit "4."**

36.      On May 22, 2020, Dragon Pharma responded to AG's April 23, 2020 letter with the details and third party testing for the Unsaleable Goods. Dragon Pharma also asked AG to (a) return of the 43,200 Dragon Pharma® labels in its possession, (b) destroy the 77,245 units of Unsaleable Goods that AG had in its inventory, (c) return of the $127,015.00 in deposits, and (d) for consequential damages.  Dragon Pharma also responded to AG's threat to sell Dragon Pharma's Unsaleable Goods by notifying AG that such action by AG would constitute, at a minimum, trademark infringement and unfair competition.

**<u>Defendants' Sale of Counterfeit and Infringing Dragon Pharma® Goods</u>**

37.     In early June 2020, Dragon Pharma ordered from Legacy Supplements 250 units of Dragon Pharma® Black Viper, through an intermediary, Worldwide Trading Corp.

38.     Eric Araujo of Dragon Pharma asked Juan Barbosa of Legacy Supplements how he obtained the product. Mr. Barbosa left Mr. Araujo the following message on WhatsApp:

So yea here is the story.  The story is that um. Let me explain it to you how basically we are getting this inventory.  Um. So the inventory is with their Dragon Pharma's old uh old manufacturer. So they had created uh a bunch of that order for Dragon Pharma and then Dragon Pharma never paid them for that order.  This was like a month like fours week ago when Coronavirus first hit.  Because of that and Dragon Pharma starting a new line they decided to kind of screw them over the manufacturer. Dragon Pharma screwed over the manufacturer and now the manufacturer is trying to get rid of those items.  Uh. Basically very cheap because they have no one to basically sell it to so. Uh I know the manufacturer and they presented me with that opportunity so that's how we're getting that so uh basically I'm just waiting on pictures but he told me they are really busy today and as soon as he gets a chance he will.

39.     On or about June 24, 2020, Dragon Pharma received the Dragon Pharma® Black Viper from Worldwide Trading Corp.  A true and correct copy of the bill of lading is attached as **Exhibit "5."**  Actual pictures of the Dragon Pharma® Black Viper are attached as Composite **Exhibit "6."**  The trademarks are identical to the Dragon Pharma® Trademark and Dragon Pharma's Black Viper trademark.  Further, the trade dress is identical to Dragon Pharma's trade dress.  See **Exhibit "2."**

40.     These products were not approved or sold by Dragon Pharma.  Dragon Pharma has not inspected, certified the quality of, or approved the Counterfeit Dragon Pharma® Goods that AG sold to Legacy Supplements, which were shipped to Worldwide Trading Corp, and sold to Dragon Pharma.

41.     Upon information and belief and as threatened in **Exhibit "4"** and without Dragon Pharma's consent, Defendants have taken, and are continuing to take the Unsaleable Goods (over 77,000 units) in AG's warehouse, which would have the actual pre-printed labels provided by Dragon Pharma with Dragon Pharma's Trademarks and trade dress affixed to the containers and/or is manufacturing new product using the 43,000 pre-printed Dragon Pharma® labels in its possession and is selling these products to retailers.

42.     Given what appears to be Defendants' use of Dragon Pharma's own labels, the Counterfeit Dragon Pharma® Goods offered for sale and sold under identical marks and trade dress are indistinguishable from the authentic Dragon Pharma® goods to consumers, both at the point of sale and post-sale. By using the Dragon Pharma® Trademark, Defendants have created a false association between their counterfeit and infringing goods and Dragon Pharma.

43.     On June 25, 2020, undersigned counsel sent AG's counsel a cease and desist letter ("C&D Letter").  A true and correct copy of the C&D Letter is attached hereto as **Exhibit "7."** The parties exchanged emails, but there was no resolution.  Subsequent to the letter and emails, Dragon Pharma was made aware of additional sales of Counterfeit Dragon Pharma® Goods.

## Counterfeit Dragon Pharma® Goods for sale by Supplement Edge

44.     On June 26, 2020, Dragon Pharma ordered Dragon Pharma® Venom on eBay from Supplement Edge.  Supplement Edge is not an authorized retailer of Dragon Pharma products.

45.     Dragon Pharma received the product on or about June 28, 2020.  A true and correct copy of the order confirmation is attached as **Exhibit "8."**  Photos of the Venom product that Dragon Pharma received are attached as Composite **Exhibit "9."**

46.     These products were not approved or sold by Dragon Pharma.  Dragon Pharma has not inspected, certified the quality of, or approved the Counterfeit Dragon Pharma® Goods that Supplement Edge sold.

47.     Upon information and belief, AG supplied these products to Supplement Edge.

## Counterfeit Dragon Pharma Goods for sale in Bolivia

48.     On July 15, 2020, Dragon Pharma's distributor in Bolivia, Bolivia Fitness, informed Dragon Pharma that a distributor of Bolivian dietary supplements has Dragon Pharma® goods for sale below market price.

49.     Bolivia Fitness purchased a Dragon Pharma® Viper product from a distributor, which show that it is Lot #001201, which is the last lot number that Dragon Pharma received and purchased from AG and a violation of cGMPs.

50.     These products were not approved or sold by Dragon Pharma or any of its retailers. Dragon Pharma has not inspected, certified the quality of, or approved these Counterfeit Dragon Pharma® Goods.

51.     A comparison of the Dragon Pharma® and the DP Trademarks with the marks used by Defendants in connection with the promotion and sale of Counterfeit Dragon Pharma® Goods reveals the obvious counterfeit and infringing nature of Counterfeit Dragon Pharma® Goods.

**Counterfeit Dragon Pharma Goods for sale in Brazil**

52.     Recently, Dragon Pharma's Brazilian distributor, Supplement Best, told Dragon Pharma's CEO that the market in Brazil is flooded with Counterfeit Dragon Pharma® Goods for prices below market price.  He told Dragon Pharma that Supplement Edge obtained the Counterfeit Dragon Pharma® Goods from AG because AG had to "get rid of it."

**The Effect of Defendants' sale of the Counterfeit Dragon Pharma® Goods**

53.     Upon information and belief, Defendants' Counterfeit Dragon Pharma® Goods are of a quality substantially and materially different than that of Dragon Pharma's genuine goods. Defendants are actively using, promoting, and otherwise advertising, distributing, selling, and/or offering for sale substantial quantities of their Counterfeit Dragon Pharma® Goods with the knowledge and intent that such goods will be mistaken for the genuine high quality dietary supplements offered for sale by Dragon Pharma, despite Defendants' knowledge that they are without authority to use the DP Trademarks.

54.     The net effect of Defendants' actions will cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Counterfeit

Dragon Pharma® Goods are genuine goods originating from, associated with, and approved by Dragon Pharma.

55.     At all times relevant hereto, Defendants in this action have full knowledge of Dragon Pharma's ownership of the Dragon Pharma® and DP Trademarks, including Dragon Pharma's exclusive right to use and license such intellectual property and the goodwill associated therewith.

56.     Defendants' use of the Dragon Pharma® and DP Trademarks, including the promotion and advertisement, reproduction, distribution, sale, and offering for sale of their Counterfeit Dragon Pharma® Goods, is without Dragon Pharma's consent or authorization.

57.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Dragon Pharma's rights for the purpose of trading on Dragon Pharma's goodwill and reputation. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Dragon Pharma and the consuming public will continue to be harmed.

58.     Defendants' above-identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Dragon Pharma's genuine goods and Defendants' Counterfeit Dragon Pharma® Goods, which there is not.

59.     Further, upon information and belief, Defendants are likely to continue exporting to and selling the Counterfeit Dragon Pharma® Goods in South America.

60.     Dragon Pharma has no adequate remedy at law.

61.     Dragon Pharma is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and wrongful use of the Dragon Pharma Trademark® and the DP Trademarks. If Defendants' counterfeiting, infringing, and unfair competitive activities are not preliminarily and permanently enjoined by this Court, Dragon Pharma and the consuming public will continue to be harmed.

62.     The harm and damages sustained by Dragon Pharma have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Dragon Pharma Goods.

## COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114) (Against all Defendants)

63.     Dragon Pharma hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 62 above.

64.     This is an action for trademark counterfeiting and infringement against AG and Becker based on their use of counterfeit and confusingly similar imitations of the registered Dragon Pharma® Trademark in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Dragon Pharma® Goods.

65.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of the Dragon Pharma® Trademark.  Defendants are continuously infringing and inducing others to infringe the Dragon Pharma® Trademark by using it to advertise, promote, sell, and offer to sell the Counterfeit Dragon Pharma® Goods.

66.     Defendants' counterfeiting and infringing activities are likely to cause, and actually are causing, confusion, mistake, and deception among members of the trade and the

14

general consuming public as to the origin and quality of Defendants' Counterfeit Dragon Pharma® Goods.

67.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Dragon Pharma and are unjustly enriching Defendants with profits at Dragon Pharma's expense.

68.     Defendants' above-described illegal actions constitute counterfeiting and infringement of the DP Trademarks in violation of Dragon Pharma's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

69.     Defendants have engaged in this conduct knowingly, willfully, and in bad faith.

70.     Dragon Pharma has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

71.     Dragon Pharma has no adequate remedy at law.

## COUNT II – COMMON LAW TRADEMARK INFRINGEMENT PURSUANT TO §43(a) OF THE LANHAM ACT (15 U.S.C. 1125 (a) (Against All Defendants)

72.     Dragon Pharma hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 62 above.

73.     This is an action for common law trademark infringement against AG and Becker based on their use of confusingly similar imitations of the DP Trademarks in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Dragon Pharma® Goods.

74.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using infringements of the DP Trademarks. Defendants

are continuously infringing and inducing others to infringe the DP Trademarks by using them to advertise, promote, sell, and offer to sell the Counterfeit Dragon Pharma® Goods.

75.     Defendants' counterfeiting and infringing activities are likely to cause, and actually are causing, confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Dragon Pharma® Goods.

76.     Defendants' unlawful actions have caused, and are continuing to cause, unquantifiable damages to Dragon Pharma and are unjustly enriching Defendants with profits at Dragon Pharma's expense.

77.     Defendants' above-described illegal actions constitute trademark infringement of the DP Trademarks in violation of Dragon Pharma's rights under § 32 of the Lanham Act, 15 U.S.C. § 1125.

78.     Defendants have engaged in this conduct knowingly, willfully, and in bad faith.

79.     Dragon Pharma has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

80.     Dragon Pharma has no adequate remedy at law.

### COUNT III - FALSE DESIGNATION OF ORIGIN PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a)) (Against all Defendants)

81.     Dragon Pharma hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 62 above.

82.     Upon information and belief, Defendants' Counterfeit Dragon Pharma® Goods bearing the Dragon Pharma® Trademark and one or more of the DP Trademarks have been

widely advertised and offered for sale throughout the United States.

83.     Defendants' Counterfeit Dragon Pharma Goods bearing the Dragon Pharma® Trademarks and one or more of the DP Trademarks are virtually identical in appearance to Dragon Pharma's genuine goods. However, Defendants' Counterfeit Dragon Pharma® Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Dragon Pharma® Goods.

84.     Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Dragon Pharma® Goods, false designations of origin and false descriptions and representations, including words and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Dragon Pharma's detriment.

85.     Defendants have authorized infringing uses of one or more of the Dragon Pharma® and DP Trademarks in Defendants' advertisement and promotion of their Counterfeit Dragon Pharma® Goods. Defendants have misrepresented to members of the consuming public that the Counterfeit Dragon Pharma® Goods being advertised and sold by them are genuine, non-infringing goods.

86.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

87.     Defendants have engaged in this conduct knowingly, willfully, and in bad faith.

88.     Dragon Pharma has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their

illegal activities.

89.     Dragon Pharma has no adequate remedy at law.

## COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT
### (Against all Defendants)

90.     Dragon Pharma hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 62 above.

91.     This is an action for common law trademark infringement against AG and Becker based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Dragon Pharma® Goods bearing one or more of the Dragon Pharma® and DP Trademarks. Dragon Pharma is the owner of all common law rights in and to the Dragon Pharma® and DP Trademarks.

92.     This is an action for trademark counterfeiting based on its use of counterfeit and confusingly similar imitations of the Dragon Pharma® and DP Trademarks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of the Counterfeit Dragon Pharma® Goods.

93.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Dragon Pharma® Goods bearing the Dragon Pharma® and DP Trademarks.

94.     Defendants have engaged in this conduct knowingly, willfully, and in bad faith.

95.     Dragon Pharma has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

96.     Dragon Pharma has no adequate remedy at law.

## COUNT V - COMMON LAW UNFAIR COMPETITION
### (Against all Defendants)

97.     Dragon Pharma hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 62 above.

98.     This is an action against Defendants based on their promotion, advertisement, distribution, sale and/or offering for sale of goods bearing and/or using marks that are virtually identical, both visually and phonetically, to the Dragon Pharma® and DP Trademarks in violation of Florida's common law of unfair competition.

99.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods bearing counterfeits and infringements of one or more of the Dragon Pharma® and DP Trademarks.

100.    Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of the Dragon Pharma® and DP Trademarks.

101.    Defendants have engaged in this conduct knowingly, willfully, and in bad faith.

102.    Dragon Pharma has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

103.    Dragon Pharma has no adequate remedy at law.

## COUNT VI – FLORIDA DECEPTIVE AND UNFAIR PRACTICES ACT
### (Against all Defendants)

104.    Dragon Pharma incorporates the allegations in paragraphs 1 through 62 as if

fully set forth herein.

105.    Defendants' use of the Dragon Pharma® Trademark and DP Trademarks have intentionally caused a likelihood of confusion among the public and otherwise constitute deceptive practices in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").

106.    At all relevant times, Defendants solicited, advertised, offered, and provided goods and services and, thereby, were engaged in trade or commerce as defined in Fla. Stat. § 501.203.

107.    At all relevant times, Dragon Pharma was a consumer as defined in Fla. Stat. § 501.203.

108.    Defendants have engaged in this conduct knowingly, willfully, and in bad faith, justifying the assessment of increased, exemplary, and punitive damages against Defendants, jointly and severally, in an amount to be determined at trial.

109.    Defendants have engaged in this conduct knowingly, willfully, and in bad faith.

110.    Dragon Pharma has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

111.    Dragon Pharma has no adequate remedy at law.

## COUNT VII – BREACH OF CONTRACT
### (against Defendant AG)

112.    Dragon Pharma incorporates the allegations in paragraphs 1 through 62 as if fully set forth herein.

113.    Dragon Pharma and AG entered into a series of contracts for the sale of the Defective Goods beginning in 2017 for the sale by AG to Dragon Pharma of product conforming to the formula, label, specifications, Dragon Pharma's instructions, and any certificates of composition.

20

114.     Dragon Pharma would submit purchase orders to AG, put down a deposit, send AG its Dragon Pharma® pre-printed and AG would manufacture the Dragon Pharma® dietary supplements, affix the pre-printed Dragon Pharma® labels to the finished product, have them shipped to Dragon Pharma, and send Dragon Pharma an invoice for the balance due.

115.     Dragon Pharma has performed all, or substantially all, of the things that the contract required.

116.     AG delivered product that did not meet label claim, was non-confirming, late, and in breach of its agreement with Dragon Pharma.

117.     Therefore, as a direct and proximate result of AG's breach, Dragon Pharma has suffered economic losses and other general and specific damages, including but not limited to, the amounts paid for the Defective Goods, deposits for the Unsaleable Goods, costs to ship replacement product, costs to replace Dragon Pharma's customers' inventory, cost to destroy product, loss of shelf space, loss of customers, and other consequential damages, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## COUNT VIII – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against Defendant AG)

118.     Dragon Pharma incorporates the allegations in paragraphs 1 through 62 as if fully set forth herein.

119.     Fla. Stat. § 672.314 provides that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

120.     AG is a merchant with respect to the sale of various products, including the Defective Goods at issue in this action. Therefore, a warranty of merchantability is implied in every contract for sale of AG products to consumers.

121.     However, the Defective Goods are not merchantable, did not meet label claim, are non-conforming, and are not free of defects.

122.    Therefore, AG has breached its implied warranty of merchantability regarding these products.

123.    Therefore, as a direct and proximate result of AG's breach, Dragon Pharma has suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Defective Goods, deposits for the Unsaleable Goods, costs to ship replacement product, costs to replace Dragon Pharma's customers' inventory, cost to destroy product, loss of shelf space, loss of customers, and other consequential damages, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## JURY TRIAL DEMAND

Pursuant to Fed. R .Civ. P. 38 (b), Dragon Pharma hereby demands a trial by jury on all issues so triable.

## FOR RELIEF

WHEREFORE, Dragon Pharma demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.    Entry of preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, retailers, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, exporting, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Dragon Pharma® Goods; from infringing or counterfeiting the Dragon Pharma® and DP Trademarks; from using the Dragon Pharma® and DP Trademarks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade dress, trade name or trademark or design that may be calculated to falsely advertise the goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Dragon Pharma; and from

affixing, applying, annexing or using pre-printed Dragon Pharma® labels on product.

        b.     Entry of an Order requiring Defendants to account to and pay Dragon Pharma for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Dragon Pharma be trebled, as provided for under 15 U.S.C. §1117, or, at Dragon Pharma's election with respect to Count I, that Dragon Pharma be awarded statutory damages from each Defendants in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

        c.     That Dragon Pharma be awarded damages it has sustained as a consequence of Defendants' conduct under 15 U.S.C. § 1117(a);

        d.     That such damages and profits be trebled and awarded to Dragon Pharma as a result of Defendants' willful, intentional, and deliberate acts in violation of the Lanham Act, under 15 U.S.C. § 1117;

        e.     That all of the Counterfeit Dragon Pharma® Goods and the pre-printed Dragon Pharma® labels be returned to Dragon Pharma or destroyed as allowed under 15 U.S.C. § 1118;

        f.     Provide a list of customers to Dragon Pharma that Defendants' sold, exported, or distributed the Counterfeit Dragon Pharma® Goods and the Unsaleable Goods to;

        g.     For an order requiring Defendants, under Florida common law, to pay actual and punitive damages upon a proper showing pursuant to Fla. Stat. § 768.72, together with the costs of this action upon a proper showing;

        h.     Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) and Fla. Stat. § 501.2105 of Dragon Pharma's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

      i.      Reimbursement of the purchases of the Counterfeit Dragon Pharma® Goods that Dragon Pharma bought from Legacy Supplements and Supplement Edge.

      j.      Refund of the $127,015.00 in deposits for the Unsaleable Goods.

      k.      Entry of an award of pre-judgment and post-judgment interest.

      l.      Entry of an Order for any further relief as the Court may deem just and proper.

Dated: July 27, 2020

Respectfully submitted,

*/s/ Erica W. Stump*
Erica W. Stump, Esq. (FBN 0427632)
Erica W. Stump, P.A.
110 E. Broward Blvd., Suite 1700
Fort Lauderdale, FL 33301
(954) 828-2334
Facsimile: (954) 278-8510
erica@ericawstump.com

*Attorney for Plaintiff, Dragon Pharma LLC*

24